**STATE of Missouri, Respondent,**

v.

**Joe Patrick BUCHANAN, Appellant.**

No. 53227.

Supreme Court of Missouri,
Division No. 1.

Oct. 14, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, James J. Sauter, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Rufus Burrus, Independence, for appellant.

WELBORN, Commissioner.

Appeal from five-year sentence for robbery in the first degree with a deadly weapon.

At around 2:00 A.M., August 19, 1966, Sherrill Followell, the sole attendant at a gasoline station at the intersection of Highways 152 and 69 in Clay County, saw two men walking toward the station. When the men reached the station, the larger of the two produced a sawed-off shotgun which he pointed at Followell and ordered Followell into a rear room. The intruders took $35 from Followell's pocket. They also broke the door into a room where they took $120 in a money bag from a desk drawer. Followell was ordered to crawl under a desk. He did so and saw the robbers no more that evening.

After a few minutes, Followell went to a store next door and called the Liberty Police Department. He told investigating officers that the person who held the gun on him was a large Negro man, over six feet

tall and weighing more than 200 pounds. He was unable to describe the second man, other than to say that he was a smaller Negro who stood behind the larger man most of the time.

Upon receiving the report of the robbery, Liberty and Clay County law enforcement authorities placed "Operation Barrier" in effect, with officers at various locations on highways in the vicinity in an effort to apprehend the robbers. Sometime between 2:15 and 2:40 A.M., a deputy sheriff at Birmingham Road and Randolph saw a Chevrolet panel truck approaching. He stopped the truck, which had "The General Cleaning Company" on it and also the words "Floor Finishers." The driver, a Negro named McAdams, got out of the vehicle, and, at the deputy's direction, two other Negro men emerged from the truck. McAdams identified himself and told the deputy that they had been on a "non-commercial job" in Liberty. A second Negro, described by the deputy as "about five-eleven to six foot that weighed about two hundred thirty to forty pounds," produced a driver's license bearing the name "Joe Buchanan." The deputy identified the defendant at the trial as such person. The deputy opened the door of the truck and looked in but couldn't see anything. He did not search the three men. After radioing "the station" to find whether there was further information which might lead to identification of the robbers, the deputy permitted the three to proceed.

On the evening of October 23, 1966, Buchanan was arrested by Independence, Missouri police officers. He was placed in a lineup at the Kansas City jail, where Followell identified him as the person who held the gun in the robbery. Buchanan was charged with robbery in the first degree with a deadly weapon.

Buchanan denied participation in the robbery. He testified that he and another person accompanied McAdams, an employee of a cleaning company, to work on a job in North Kansas City on the night of the robbery; that, after finishing the job, they had driven to a drive-in near Liberty, but it was closed and they were returning to Independence when the officer stopped the truck.

Various claims of error are advanced by appellant. One is dispositive of the appeal. At the trial the state introduced into evidence a sawed-off shotgun which Followell identified as the one held by Buchanan in the robbery. The prosecution obtained this weapon as the result of the issuance of a search warrant by a judge of the Jackson County Magistrate Court. The complaint signed by a member of the Independence, Missouri police force, dated October 24, 1966, described the property to be seized as a sawed-off shotgun belonging to "Jo Patrick Buchanan * * * heretofore unlawfully used in a (sic) Armed Robbery," kept at "310 N. Hocker, one story frame building with outbuildings." A warrant was issued in response to the complaint. The clerk of the magistrate court who prepared the warrant stated that she "made the warrant off of the complaint."

Joe Buchanan lived with his mother and stepfather at 314 North Hocker in Independence. The officers took the warrant to that address where they served it upon Mrs. Robinson, Buchanan's mother. The officers searched the residence and an outbuilding at the rear and found nothing. They searched the yard, and one of the officers saw the weapon lying in the southeast part of the yard, eight to ten feet from the street. According to the officer, "there's some grass there but the gun was visible, you didn't have to uncover it."

The appellant filed no attack on the search warrant, as authorized by Supreme Court Rule 33.03, V.A.M.R. However, he did object to the introduction into evidence of the weapon on numerous grounds, including the validity of the warrant and its execution. The trial court did hear evidence on the matter, outside the presence of the jury, so we consider that the trial court exercised its discretion to hear what was, in effect, a motion to suppress, during the trial. Supreme Court Rule 33.03(a) 5,

V.A.M.R. In any event, the state raised no objection to the procedure followed.

Among the objections to the validity of the warrant and the search is the complaint that the affidavit upon which the warrant was issued described the premises to be searched as "310 N. Hocker." There was no evidence that the property searched was at 310 N. Hocker. All of the evidence was that it was 314 N. Hocker. The warrant upon which the return was made shows, on its face, that it was typed, as the clerk stated, from the affidavit, "310 North Hocker." However, someone, not identified, had superimposed with pen and ink the numeral "4" over the "0" in the number "310." One officer who assisted in the search produced, at the hearing outside the presence of the jury, what purported to be a copy of the warrant issued. In it, the change in the description of the premises had not been made. There was no showing of any amendment of the complaint or any action by the issuing magistrate to amend the warrant issued.

■ The state would dismiss the variance between the complaint and the warrant on which the return was made as "obviously a typographical error." This conclusion is apparently based on the fact that Buchanan lived at 314 North Hocker and the search was actually made there. However, the description of the place to be searched is a vital element of a search warrant. See State v. Cook, 322 Mo. 1203, 18 S.W.2d 58, 60[7], [8]. Section 15 of Article I, Constitution of Missouri, 1945, V.A.M.S., prohibits the issuance of a search warrant "without describing the place to be searched, or the person or thing to be seized, as nearly as may be; nor without probable cause, supported by written oath or affirmation." The discrepancy here present may not be ignored as "obviously a typographical error." The return which the sheriff stated was erroneous, dated before the issuance of the warrant, involved in State v. Perry, Mo.Sup., 267 S.W. 828, cited by the state, presented a different problem. Here the record shows no affidavit to support issuance of a warrant for search of premises at 314 North Hocker. The change in the search warrant was not authorized and cannot now afford basis for legalizing a search at 314 North Hocker. State v. Lock, 302 Mo. 400, 259 S.W. 116, 123–124[7]; State v. Stogsdill, Mo.App., 297 S.W. 977.

■ The state argues that the defect in the search warrant is of no moment because the weapon was not the product of an unreasonable search, having been discovered by the police officers in open view in the front yard of the premises. However, the officer testified that, after searching the residence, Mrs. Robinson was informed that "we were going to search [a shed] and the yard, which we did." "[W]e searched the yard and we found the gun before we got to the street." This testimony shows that the officers purported to act under the authority of the warrant. The protection of places of residence against unreasonable search extends to the "curtilage." The front yard of the premises would be within the curtilage. State v. Egan, Mo.App., 272 S.W.2d 719, 724[9]. We are not here dealing with places remote from the residence, as was the situation in State v. Cobb, 309 Mo. 89, 273 S.W. 736, and State v. Zugras, 306 Mo. 492, 267 S.W. 804, cited by the state. We are of the opinion that the place where the weapon was found does not preclude reliance upon constitutional protection.

■ The state also argues that the weapon was "visible" and did not have to be "uncovered," according to the officer, causing the situation to be one of "no search," within the rule prescribed by such cases as State v. Hawkins, 362 Mo. 152, 240 S.W.2d 688. However, the officer's testimony clearly showed that the weapon was discovered in a search of the yard. The officers were on the premises and conducted such search pursuant to the purported authority of the warrant. Not having been lawfully on the premises, they may not now assert that no search was in-

volved. State v. Turner, 302 Mo. 660, 259 S.W. 427, 428[2]. See McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153.

 The trial court erred in overruling the defendant's objection to the introduction of the evidence obtained by use of the search warrant. For such error, the judgment must be reversed and the cause remanded for a new trial.

Reversed and remanded.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.