STATE of Missouri, Respondent,

v.

Kevin STRICKLAND, Appellant.

No. 61528.

Supreme Court of Missouri,
En Banc.

Dec. 15, 1980.

Rehearing Denied Jan. 13, 1981.

John B. Williams, Lee M. Nation, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Nancy D. Kelley, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

Kevin Strickland was convicted by a jury of capital murder, § 565.001, RSMo 1978, and two counts of second degree murder, § 565.004, RSMo 1978. The state waived the death penalty after defendant was found guilty of capital murder. His punishment was fixed at life imprisonment without eligibility for probation or parole for fifty years for capital murder, § 565.008, RSMo 1978, and ten years on each count of second degree murder. Sentences and judgment were rendered accordingly with sentences to run concurrently.

Appellant charges error to: (1) sufficiency of evidence to convict of capital murder; (2) sufficiency of the indictment; (3) seizure of evidence; (4) state's closing argument; (5) use of MAI–CR instructions rather than MAI–CR 2d instructions; (6) in–court identification; (7) death penalty qualification of prospective jurors during voir dire; and (8) failure to charge second degree murder. Affirmed.

On April 25, 1978, defendant and three others shot and killed Larry Ingram, John Walker and Sherri Black, and wounded Cynthia Douglas. Cynthia Douglas related the events that took place that evening: Between 7:00 and 7:30 p. m., she, Larry Ingram, John Walker, and Sherri Black were sitting in the bedroom of Ingram's house watching television, drinking cognac, and smoking marijuana. There was a knock at the front door. Ingram picked up a pistol, went to the door, and admitted Vincent Bell and Kim Adkins. All three returned to the bedroom where Ingram and Bell sat down. Adkins stood in the doorway. Adkins then walked over, picked up the pistol, pulled another one and held it on Ingram, Black, Walker and Douglas. Ingram asked him what he wanted and he replied, "You know what I want." Bell got up and left the room; Ingram followed. Bell later returned with defendant and a person with a sack over his head. Adkins

left the room and defendant held a shotgun on Black, Walker and Douglas. Somebody later threw Cynthia Douglas a rope and said, "Tie them up." As Cynthia tied John Walker, she started to glance around and defendant said, "Don't look at me. Don't look at me." Cynthia finished tying the other two; then someone tied Cynthia to Sherri Black. Cynthia did not look to see who it was. Cynthia heard the intruders ransacking the house and talking to Ingram in the other room. She heard a shot and then the intruders came into the bedroom and shot John Walker and Sherri Black. When they aimed at Cynthia and pulled the trigger, it clicked. A few minutes later they came back and shot Sherri Black with a shotgun; some of the pellets hit Cynthia in the leg. They then ran out of the house.

When the police arrived, Ingram, Walker and Black were found dead with their hands tied. It was later determined that Ingram and Walker died from gunshot (pistol) wounds to the head and Black died from gunshot and shotgun wounds to the head.

Appellant contends that the evidence was insufficient to support the conviction of capital murder because the state did not prove the elements of premeditation, deliberation or intent.

A killing through the use of a deadly weapon on a vital part of the body of the victim is sufficient to permit a finding of intent to kill. *State v. Hammonds*, 459 S.W.2d 365, 368 (Mo.1970); *State v. Ward*, 569 S.W.2d 341, 344 (Mo.App.1978). Premeditation is present when an accused thinks of his act for any length of time before acting. *State v. Marston*, 479 S.W.2d 481, 484 (Mo.1972). Deliberation is present when the act of killing is performed in a "cool and deliberate state of mind." *State v. Jackson*, 511 S.W.2d 771, 774 (Mo. 1974); *State v. Marston, supra*. Premeditation and deliberation may be inferred from the circumstances of the homicide in support of a finding of capital murder. *State v. Lindsey*, 507 S.W.2d 1, 4 (Mo. banc 1974); *State v. Nelson*, 514 S.W.2d 581, 582 (Mo. 1974); *State v. Sturdivan*, 497 S.W.2d 139,

142 (Mo.1973). Defendant need not personally have committed the killing; it is sufficient that he was present and participated in concert with others in the commission of the crime, or aided and assisted in its commission. *State v. Butler*, 310 S.W.2d 952, 957 (Mo.1958); *Rowden v. State*, 493 S.W.2d 699, 702 (Mo.App.1973).

In considering a contention that the state has failed to prove the elements of intent, premeditation and deliberation, the Court accepts as true all evidence and inferences tending to support the verdict and disregards all evidence and inferences to the contrary; the Court's function is not to substitute its judgment for that of the jury but to determine whether the evidence, considered in the light most favorable to the state is sufficient to support the verdict. *State v. Reed*, 453 S.W.2d 946, 949 (Mo. 1970).

■ So examined, there was sufficient evidence to support defendant's conviction of capital murder. Defendant held a shotgun on Walker, Black and Douglas thus evincing his affirmative participation. Ingram, the subject of the capital murder conviction, was killed as a result of a gunshot wound to the head. His hands were tied showing a lack of provocation for the shooting. The jury could reasonably infer from the evidence that defendant, acting alone or in concert with another "unlawfully, willfully, knowingly, deliberately, and with premeditation" killed Larry Ingram.

Appellant claims the indictment was fatally defective because it failed to allege that defendant had acted either with a common purpose or in offering aid or encouragement to others in the act of murder.

■ The test of the sufficiency of an indictment is whether it contains all the essential elements of the offense as set out in the statute and clearly apprises defendant of the facts constituting the offense in order to enable him to meet the charge and to bar further prosecution. *State v. Tandy*, 401 S.W.2d 409, 412–13 (Mo.1966); *State v. Bott*, 518 S.W.2d 726, 728 (Mo.App.1974). The indictment was framed in the language of § 565.001, RSMo 1978, and charged defendant with committing the offenses "either acting alone or knowingly in concert with another." It included sufficient facts to enable defendant to defend the case and to bar further prosecution.

Appellant charges error to the denial of his motion to suppress shotgun shells seized pursuant to a search warrant that did not identify the shells as items to be seized. He further argues that the shotgun shells could not be seized pursuant to a warrant in any event because § 542.271, RSMo 1978, describes with specificity the items that may be seized and unexpended shotgun shells are not among them.

■ The absence of the shells' description in the warrant does not require their suppression. An item discovered in a search authorized by a warrant may be seized if observed in plain view while the officer is in a place where he has a right to be, if discovery is inadvertent, and if it is apparent to the police that they have evidence before them. *State v. Clark*, 592 S.W.2d 709, 713–715 (Mo. banc 1979); *State v. Collett*, 542 S.W.2d 783, 786 (Mo. banc 1976); *State v. Kelsey*, 592 S.W.2d 509, 512–513 (Mo.App.1979).

In this case police officers had a warrant authorizing them to search defendant's residence for a .12 gauge shotgun, two diamond rings and a .357 caliber revolver. A "green" Remington .12 gauge shell casing had been found at the scene of the shooting. They did not, however, know of the existence or presence of the seized Remington shells prior to discovering them during their authorized search. Upon discovering the "green" Remington .12 gauge shells they properly seized them because of the connection between the shells and the crime for which the warrant had issued.

Appellant charges error to the overruling of his objection to closing argument of the prosecuting attorney on matters not in evidence. In final closing argument, the prosecutor stated to the jury:

> When she [Cynthia Douglas] talks to that fellow Harris, she then tells the police, a lineup is given, and she picks him [defendant] out.

Defense counsel objected that there was no evidence that Cynthia Douglas picked defendant out of a lineup. The prosecutor responded, "Do you then deny that she was there?" The objection was overruled and the prosecutor continued, "After the lineup and after she sees the hair, she says, 'That's the guy that did it, Nordy, Nordy, Kevin Strickland.'"

At the conclusion of the prosecutor's final closing argument, defense counsel renewed his objection and requested an additional thirty seconds to explain to the jury that the lineup did not occur until late the next afternoon rather than immediately following the murder. This request for relief was granted and counsel made his explanation to the jury.

 It is improper for a prosecutor to argue matters not in evidence. *State v. Cuckovich*, 485 S.W.2d 16, 27 (Mo.1972); *State v. White*, 440 S.W.2d 457, 460 (Mo. 1969). Nevertheless, the ruling of the trial court does not constitute reversible error in this case.

Cynthia Douglas identified defendant at trial as one of the four intruders the night of the murders. She testified that she had known defendant for two or three years but did not recognize him that night because she had never seen him with hair on his face. The next day, after talking to Randy Harris, she called the police and gave them defendant's name as the person with the shotgun. A lineup was conducted and Cynthia identified defendant.

It was defendant's contention at trial that Cynthia could not have identified defendant as one of those present without Randy Harris having first supplied defendant's name. The allowance to defense counsel of additional time to inform the jury that the lineup did not occur until after Cynthia had spoken to Harris removed any possible prejudice to defendant on account of the prosecutor's reference to the lineup.

Appellant charges error to the overruling of his motion to suppress Cynthia Douglas' in-court identification of him. He argues that because no evidence of the pre-trial lineup was adduced at trial, no independent source existed upon which the trial court could rely, thus such in-court proceedings were impermissible and the proof of identification was inadequate.

Evidence of the pre-trial lineup was not presented despite the overruling of defendant's motion to suppress. Defendant contended in his motion that the lineup was unduly suggestive because the police had been supplied with defendant's name by Cynthia prior to the lineup, but he does not advance that contention on appeal as a basis for challenging the in-court identification. Therefore, defendant's argument goes only to the weight and credibility of Cynthia Douglas' in-court identification and not to its admissibility.

 In any event, the lineup was not unduly suggestive. Although Cynthia knew defendant and gave his name to the police the next day, she was viewing the lineup to pick out the person present that night and not to pick out Kevin Strickland. Once she viewed defendant in the lineup she could have determined that he was not the person actually present that night. The ability of Cynthia Douglas to observe defendant the night of the murders while he held a shotgun on her and her friends, provided an adequate independent source to insure reliability, and removed any possible suggestiveness connected with the pre-trial lineup. *State v. Carter*, 572 S.W.2d 430, 435 (Mo. banc 1978); *State v. Parker*, 458 S.W.2d 241, 244 (Mo.1970); *State v. Payne*, 452 S.W.2d 805, 805 (Mo.1970).

Appellant contends that the instructions given to the jury regarding responsibility for the crimes of another should have been MAI–CR 2d instructions rather than the MAI–CR instructions actually given by the trial court.

 Instructions in MAI–CR were designed to submit the law applicable to all offenses committed prior to January 1, 1979. *State v. Lute*, —— S.W.2d —— (Mo. banc 1980). Defendant was convicted of an offense committed April 25, 1978; use of MAI–CR instructions was therefore proper.

During voir dire of the jury panel the prosecution asked: "Is there anybody on this jury panel who could not sit as a juror where one of the options of punishment was death?" Appellant contends that the court's exclusion for cause of prospective jurors who answered affirmatively resulted in the systematic exclusion of persons opposed to capital punishment denying him a jury drawn from a cross–section of society, and a jury that was unfairly inclined to convict. He argues that persons were excluded who had simply evidenced a disinclination to impose the death penalty.

Defendant's contention has been addressed a number of times and found meritless where a sentence of death has not been imposed. *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1969); *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1969); *State v. Jackson*, 506 S.W.2d 424 (Mo.1974); *Ginnings v. State*, 506 S.W.2d 422 (Mo.1974); *State v. Bowens*, 476 S.W.2d 495 (Mo.1972); *State v. Haynes*, 482 S.W.2d 444 (Mo.1972). The argument that the exclusion of jurors opposed to capital punishment substantially increases the risk of conviction has been continually rejected because the evidence offered in support was considered too tentative and fragmentary. *Witherspoon v. Illinois, supra*, 391 U.S. at 517, 88 S.Ct. at 1774; *Bumper v. North Carolina, supra*, 391 U.S. at 545, 88 S.Ct. at 1790; *State v. Bowens, supra* at 497; *State v. Quinn*, 461 S.W.2d 812, 814–15 (Mo.1971). Defendant advances no new evidence to warrant a different conclusion.

In *State v. Swindell*, 271 S.W.2d 533 (Mo. 1954), cited by appellant, the trial court disallowed questioning which would elicit individual feelings the prospective jurors might have regarding the death penalty after the prosecutor announced during voir dire his intention not to seek the death penalty. That case has no bearing on the present case where the death penalty was not waived by the prosecution until the verdict finding defendant guilty had been returned.

Defendant alleges pro se that:

[He] is entitled to discharge on the convictions for second degree murder because it was plain error effecting [sic] the substantial rights of the appellant to charge capital murder, offer proof of 1st degree murder and then receive a verdict on second degree murder, such that trial and conviction on a charge not made violates the rights of the appellant under the United States Constitution, the 5th, 6th and 14th amendments.

Suffice to say, the state made a submissible case of capital murder. The second degree murder convictions were proper under the charges of capital murder because second degree murder is a lesser included offense of capital murder. *State v. Amos*, 553 S.W.2d 700, 706 (Mo. banc 1977). There is no first degree murder conviction to consider.

The judgment is affirmed.

All concur.