**STATE of Missouri, Respondent,**

v.

**John DIERCKS, Appellant.**

**No. WD 34650.**

Missouri Court of Appeals,
Western District.

May 15, 1984.

Application to Transfer Denied
July 17, 1984.

James Endicott, Versailles, for appellant.

John Ashcroft, Atty. Gen., and Bruce Farmer, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P.J., and KENNEDY and LOWENSTEIN, JJ.

KENNEDY, Judge.

Defendant was convicted upon jury trial of growing and cultivating marijuana, § 195.200.1(3), RSMo Supp.1983. He was sentenced to 15 years in prison in accordance with the verdict of the jury.

Defendant has appealed, alleging several instances of trial error which he claims entitle him to a reversal. We affirm the conviction.

The facts are as follows:

Defendant was living with his girl friend in a house located on the Gravois arm of the Lake of the Ozarks. The house was owned by his girl friend's father, a John Fee.

Living nearby, one lot removed, was Mr. John Loman. The Loman house and the Fee house where defendant and his girl friend were living were separated by a building lot. There was a house on this lot but it was forward of the Loman and Fee houses so that the view and the passage between the two houses was unobstructed.

The defendant and Loman became engaged in an altercation. Defendant called the water patrol to complain of an assault upon himself by Loman. Two officers, Joseph Hughes and Gary Haupt, showed up. After talking with the defendant they went to talk with Mr. Loman in his front yard. Loman told the officers that marijuana plants were being grown in the backyard of the Fee residence where appellant lived. Officer Hughes walked across the intervening lot toward the Fee residence. He saw pots along the seawall and also on the back porch of the Fee residence, containing what he thought were marijuana plants. As a part of his officer's training he had been taught to identify marijuana plants. The back porch or "sundeck" was unenclosed except by a railing. The potted plants were sitting on tables, on some benches and on the floor.

Hughes returned to where Officers Haupt and Loman were. Haupt and Hughes, accompanied by Loman, then went back to the Fee residence. The defendant was on the dock. Haupt took Hughes' Miranda card and read the defendant his Miranda rights.

Hughes asked the defendant if he had any identification on him. He said he did have "up at the house." Hughes and Haupt followed defendant toward the house. As they neared the door, the defendant said: "Come on in, be careful." The "be careful" was because of paint on the officers' shoes from the freshly painted boat dock.

The three entered the house. Defendant searched through the house for his identification. He opened up a small box that looked like a jewelry box on an end table. He closed it very quickly, but not before Hughes spotted a bag with a "leafy-looking material" in it. Hughes asked defendant if he would open the box again. Defendant immediately agreed, and Hughes took the bag of what turned out to be marijuana, as Hughes had suspected.

Defendant was placed under arrest. Other officers arrived shortly, and the potted marijuana plants were loaded on the truck and hauled away.

In due course defendant was charged with "manufacturing marijuana," was tried and convicted.

The marijuana plants seized at the place of defendant's residence on the day of his arrest, as earlier described, were introduced in evidence. There were 190 of them. Defendant says the court erred in admitting them into evidence, because their seizure was the product of an unreasonable and unlawful warrantless search.

This point is denied.

The plants which were located in the pots (sometimes referred to by the witnesses as "flats" or "little peat pots") on the back porch of defendant's residence were plainly visible to Officer Hughes as he stood on the adjoining property, and were recognizable by him as marijuana plants. They were from four to six inches high. The plants on the back porch could be seen from the Loman premises, although they could not be recognized from that distance as marijuana. The plants located in the pots along the seawall were even more readily visible. There seemed to be no attempt to conceal the plants from view from the adjoining property. There was no apparent expectation of privacy.

The appellant's attack here focuses upon the warrantless seizure of the plants on the back porch. He says, citing *State v. Buchanan*, 432 S.W.2d 342 (Mo.1968), that the porch was within the "curtilage" and therefore within the Fourth Amendment protection against warrantless searches.

He says that the "plain view" doctrine does not justify the seizure of the plants seen by the officer from a distance, but identified from the adjoining landowner's premises. He says that two of the conditions of the "plain view" doctrine, listed in *State v. Strickland*, 609 S.W.2d 392, 395 (Mo. banc 1980) were not met, viz., that the officer's seeing and identifying the contraband was "inadvertent," and that the officer was at a place where he had a right to be. He adds that appellant's invitation or consent for the officers to be upon the Fee property was only for the purpose of investigating the assault and did not allow the officers the range which they took in discovering the marijuana plants.

We think the basic inquiry is whether appellant had a legitimate expectation of privacy in the places where he had the potted marijuana, and we conclude that he did not. With respect to the plants sitting along the seawall, visible at close range from points where the public was coming and going, that seems fairly clear. As to the plants on the back porch, a closer analysis is necessary, but the same conclusion holds. For one thing, the display of the plants on the seawall indicates that defendant had no expectation of privacy in the same plants on the back porch. Add the fact that they were on an unenclosed porch, visible and identifiable from the adjoining neighbor's property, and you have a picture of property—if that term can be used with respect to contraband—for which no privacy was expected. *See People v. Lashmett*, 71 Ill.App.3d 429, 27 Ill.Dec. 657, 389 N.E.2d 888 (1979); *People v. Dasenbrock*, 96 Ill.App.3d 625, 52 Ill.Dec. 85, 421 N.E.2d 948 (1981); *State v. Esrock*, 660 S.W.2d 222, 225 (Mo.App.1983); *State v. Simpson*, 611 S.W.2d 556, 558 (Mo.App. 1981); *People v. Fillhart*, 93 Misc.2d 911, 403 N.Y.S.2d 642 (1978).

Back to *State v. Buchanan*, 432 S.W.2d 342 (Mo.1968): The case does not help defendant, but it needs to be commented upon. There the officers, searching a house for a sawed-off shotgun used in a robbery under a search warrant held by the court to have been invalid, found the shotgun in the front yard. The court held that the gun was within the "curtilage,"[1]

---

1. In *U.S. v. Arboleda*, 633 F.2d 985, 992 (2d Cir.1980) *cert. denied*, 450 U.S. 917, 101 S.Ct. 1362, 67 L.Ed.2d 343 (1981), Judge Friendly wrote:

> Arboleda likewise is not helped by invocation of the hoary concept of "curtilage". Terming a particular area curtilage expresses a conclusion; it does not advance Fourth Amendment analysis. The relevant question is the one surveyed above, whether the defendant has a legitimate expectation of privacy in the area. *See Wattenberg v. United States*, 388 F.2d 853, 858 (9 Cir.1968). It seems decidedly questionable whether, under the *Rakas* analysis, a homeowner could insist upon a search warrant if he hurled a package of cocaine onto his front lawn where it could be plainly seen by anyone. In its recent decision in *Payton v. New York, supra,* 48 L.W. [4375] at 4380 [445 U.S. 573 at 590, 100 S.Ct. 1371 at 1382, 63 L.Ed.2d 639], the Supreme Court identified the line at which the requirement for an arrest warrant takes hold as "the entrance to the house" and the "threshold". See also *United States v. Santana, supra,* 427 U.S. [38] at 42, 96 S.Ct. [2406] at 2409 [49 L.Ed.2d 300] (vestibule behind open door is public place).

that the officers were "not lawfully on the premises," and that the seizure was invalid. The difference between *Buchanan* and our case is the relationship of the officers to the premises. The officers' only purported authority in *Buchanan* was the invalid search warrant. In our case, the officers were on a legitimate mission, namely, to investigate the assault reported by defendant. In the performance of their duties they were not confined to a straight path, forbidden to look either to the right or to the left. If there was a technical trespass on the intervening owner's property from which Officer Hughes viewed the marijuana plants on the back porch, that does not render the search or seizures invalid. *See U.S. v. Molkenbur*, 430 F.2d 563 (8th Cir. 1970), *cert. denied*, 400 U.S. 952, 91 S.Ct. 244, 27 L.Ed.2d 258.

Another feature which distinguishes *Buchanan* from this case is the advertence of the discovery of the gun in *Buchanan*, as opposed to the inadvertence of the' discovery of the contraband in our case.

■ Assuming "inadvertence" has anything to do with the right to seize contraband which is easily visible and identifiable from a neighbor's property, it does not disqualify this seizure that Officer Hughes walked across the intervening lot and viewed the plants with the purpose and expectation of seeing marijuana. The "inadvertence" spoken of in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and in *State v. Strickland*, supra, is related, not to developments after the officers' arrival on the premises in response to appellant's summons, but to their initial presence in and about the premises where the contraband was located. *See State v. McCurry*, 587 S.W.2d 337, 341 (Mo.App.1979).

■ Defendant offers a second reason why the marijuana plants should not have been admitted in evidence. There were 190 plants found at defendant's residence and admitted in evidence. A chemical analysis had been conducted only upon 7 of them.

Defendant says that the 183 other plants were not identified as marijuana and therefore not entitled to admission in evidence. Defendant's argument is, taken from his brief:

> In order for there to have been a proper foundation, Mr. Durham [the chemist] either, one, should have tested each plant and matched each tested sample with the potted plant in court, or, two, should have examined each marihuana plant previously and have been able to identify each one in court as the plant he viewed previously. Neither method of identification occurred here.

However, there was sufficient foundation laid for the admission of the plants into evidence. Chemist Durham and Officers Haupt and Hughes each testified that the plants were marijuana plants. Durham, of course, had chemically tested 7 of the 190 plants and testified that to chemically test each marijuana plant would have been unnecessarily time consuming. Officers Haupt and Hughes both testified to their familiarity with marijuana plants and expressed the opinion that these were of that species. The evidence was entirely sufficient for admissibility.

Of course, if there was any doubt about their being marijuana plants, it was defendant's privilege to cross-examine the witnesses who identified them as such before the jury, and also to introduce contradictory evidence if he chose to do so. The state did not need to eliminate every possible and remotest doubt that these were marijuana plants in order to get them admitted into evidence, nor does the fact that they are admitted into evidence compel the jury to believe that they are marijuana plants. *Bean v. Riddle*, 423 S.W.2d 709, 718 (Mo. 1968); *Storm v. Ford Motor Co.*, 526 S.W.2d 875, 878–79 (Mo.App.1975).

Defendant takes one more stab at this evidence. He says that the plants as introduced in evidence were in a "changed condition." How they could have been kept in the same condition as when seized, the

*But see Oliver v. U.S.*, — U.S. —, —, 104     S.Ct. 1735, 1741, 80 L.Ed.2d 214 (1984).

defendant does not explain. They were identified at trial as the ones seized from defendant's residence, and defendant really does not challenge this. The point is denied.

The marijuana were properly admitted into evidence, and defendant's exception thereto is denied.

## II

Defendant next claims that the court erred in admitting into evidence a written statement made by defendant after his arrest, in which he admitted that he had planted the marijuana plants. He says that the confession was not knowingly, freely and voluntarily given. He says that the officers withheld medical attention from him, although he repeatedly requested medical treatment. He testified also that he was refused water and cigarettes and threatened to the effect that his girl friend would be prosecuted if he did not sign a written statement.

■ Once the voluntariness of a confession has been challenged, it is the state's burden to show voluntariness by a preponderance of the evidence. *State v. Buckles*, 636 S.W.2d 914, 923 (Mo. banc 1982). The test is whether the totality of the circumstances deprived the defendant of the free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time of the statement or confession. *Id.*

■ The police officers testified with respect to the statement that defendant had given the same voluntarily. They denied that he had requested, or that he seemed to need, medical treatment. Of course, the credibility of the witnesses was in the first instance for the trial court's determination, and the court could accept the testimony of the officers and reject that of the defendant. *State v. Gantt*, 644 S.W.2d 656, 660 (Mo.App.1982); *State v. Helm*, 624 S.W.2d 513, 515 (Mo.App.1981); *State v. Jensen*, 621 S.W.2d 263 (Mo.1981). The evidence of voluntariness was suffi-

cient for the trial court to rule, as he did, that the statement was voluntarily given by the defendant, and that the same was therefore admissible in evidence.

■ Once again, as in the case of the marijuana plants, the state did not have to remove all possible doubt about the voluntariness of the confession in order to entitle it to admission into evidence. *State v. Craig*, 642 S.W.2d 98, 101 (Mo. banc 1982). And after the admission of the statement into evidence, it was still open to the defendant to challenge it by cross-examination or by direct evidence with the objective of destroying its inculpatory effect before the jury. And the jury was at liberty to find that the statement was not voluntary and reject the same.

## III

Defendant next complains of the admission into evidence of the bag of marijuana located in the small wooden box inside the house.

He says first that the bag of dried marijuana was irrelevant to the charge upon which defendant was being tried. His point is that defendant was being tried for growing and cultivating marijuana and that this charge was grounded upon the growing plants in the pots. There was no showing, defendant correctly says, that the dried marijuana was in any way connected with that which was being grown on the outside.

■ The state, however, as a part of its case, had to prove that the defendant knew the character of the marijuana plants. *State v. Netzer*, 579 S.W.2d 170, 176 (Mo.App.1979). The defendant testified at the trial that he thought the plants were marigolds or okra. It was the bag of dried marijuana that was admissible to show inferentially that defendant was not ignorant of marijuana. It is true, as defendant points out, that the relevancy of evidence is not the final consideration by the trial court. The trial court must exclude even relevant evidence if he finds that its prejudicial effect to the defendant

outweighs other considerations which make the evidence useful to prove an issue in the case. *State v. Ray*, 637 S.W.2d 708, 709–10 (Mo. banc 1982); *State v. Shirley*, 657 S.W.2d 686, 688 (Mo.App.1983). This balancing of factors is left to the discretion of the trial court within a certain discretionary range, *State v. Shirley*, 657 S.W.2d at 688; *State v. Easter*, 657 S.W.2d 52, 53 (Mo.App.1983), and we do not find in this case that the trial judge abused his discretion in allowing the evidence to be introduced.

The defendant's next objection to the bag of dried marijuana is that it was the product of an unreasonable and unlawful search and seizure.

■ This point is denied. Defendant, although he had not been formally placed under arrest at that time, still was as a practical matter under arrest from the time the police officers returned from their conversation with Mr. Loman, after they had seen and identified the marijuana plants, and had read him his *Miranda* rights. The defendant testified at the trial that he supposed he was under arrest from that time. The officers then had a right and a duty to monitor the defendant's movements. A strikingly similar situation was presented to the United States Supreme Court in *Washington v. Chrisman*, 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982). In that case a college student was arrested by a university police officer because the student was carrying a bottle of gin on campus. The officer requested identification from the student and the student requested to retrieve his identification from his dormitory room. The officer accompanied him there and, while remaining in the open doorway watching the student and his roommate (the defendant), the officer noticed what he believed to be marijuana seeds and a pipe lying on a desk in the room. The officer entered the room, confirmed that the seeds were marijuana and determined that the pipe smelled of marijuana. The United States Supreme Court upheld the search and seizure of the marijuana under the "plain view" exception to

the warrant requirement. The court stated that this exception permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be. 102 S.Ct. at 816. The court went on to state that:

[I]t is not "unreasonable" under the Fourth Amendment for a police officer, as a matter of routine, to monitor the movements of an arrested person, as his judgment dictates, following the arrest. The officer's need to ensure his own safety—as well as the integrity of the arrest—is compelling. Such surveillance is not an impermissible invasion of the privacy or personal liberty of an individual who has been arrested.

*Id.* at 817. *See also State v. Esrock*, 660 S.W.2d 222 (Mo.App.1983).

## IV

Defendant complains of the court's sending exhibits to the jury.

The jury had been out less than five minutes when they sent a note which said: "May we have composite pictures of all the plants."

■ The court decided to send to the jury all the pictures and all the written documents "except the test results and the packages." The court said: "I'm going to submit it all to them so they can't be complaining that they should have had all of them. If they get any of them, I'm going to give all of them that were introduced."

Defendant complains of the court giving the jury the photographs which they requested, and complains also of his sending them exhibits which they had not requested.

The business of sending exhibits to the jury room is a matter which is discretionary with the court, *State v. Williams*, 643 S.W.2d 3, 4 (Mo.App.1982); *State v. Smith*, 563 S.W.2d 162, 163 (Mo.App.1978), and we find no abuse of discretion here. The exhibits have not been filed here. Defendant does not single out any of the exhibits as being prejudicial to him but simply con-

demns the sending of the exhibits to the jury room.

We see no reason at all, however, to hold that the trial judge in any way abused his discretion in ruling as he did on this point.

## V

Appellant complains of the verdict-directing instruction submitted to the jury. The instruction required conviction if the jury found that the defendant "cultivated and grew" marijuana.

Defendant says that the verdict director which he submitted, which required the jury to find that the defendant "manufactured" marijuana should have been given instead and then that the court should have submitted an additional instruction defining the word "manufacture," MAI-CR2d 33.01, which includes "production" followed by yet another instruction, MAI-CR2d 33.01, defining "production" as including "cultivating and growing."

Defendant says that giving the three instructions would have been preferable to the single instruction given by the court, and that the court's use of the single instruction authorizing conviction for "cultivating and growing" must have confused the jury.

We, however, are unable to agree with defendant's view. The use of the single instruction instead of the circuitous multiplicity of instructions argued for by the defendant is much to be preferred. The "cultivated and grew" language was used in the instruction approved in *State v. Netzer*, 579 S.W.2d 170, 175 (Mo.App.1979).

## VI

Defendant complains of Instruction No. 8 which undertakes to define the word "manufacture." It said: "Manufacture means the production, preparation, propogation, compounding or processing of a controlled substance."

There is an MAI-CR2d instruction which defines the word "manufacture," MAI-CR2d 33.01. Defendant's specific complaint about this is that the instruction which was given omitted that language in the pattern instruction which says: "except that this term does not include the preparation or compounding of a controlled substance by an individual for his own use...." Defendant says that the instruction given by the court precluded the jury from considering the fact that defendant may have been preparing the marijuana for his own use.

This was not prejudicial to the defendant, however, because the personal use exception applies only to preparation and compounding and does not apply to cultivating and growing. *State v. Netzer*, 579 S.W.2d 170 (Mo.App.1979).

## VII

Defendant complains of the admission into evidence of photographs of the marijuana plants which were taken one month after their seizure by the officers. He says the photographs "did not depict conditions existing at the scene of the crime" and "an improper foundation was laid prior to their introduction into evidence". Some of the plants had grown between the time of their seizure and the time the photographs were taken, and some had deteriorated from lack of care. The admissibility of photographs rests in the discretion of the court and any differences existing in the conditions between the time of the crime and the taking of the photograph may be developed in the evidence. Any such differences go only to the weight of the evidence. *State v. Johnson*, 508 S.W.2d 18 (Mo.App.1974).

## VIII

As his final point, defendant complains of the court's omission to give MAI-CR2d 2.10 and 2.12. Defendant says that there was evidence that defendant may not have cultivated and grown the marijuana plants himself, but instead may have aided or attempted to aid his girl friend, LuAnn Fee, in doing so. If that is the case, the error was favorable to the defendant, in that the state assumed a greater burden

than it was required to assume by requiring the jury to find that the defendant himself committed the crime as a principal. *State v. Murray*, 630 S.W.2d 577, 580 (Mo. banc 1982); *State v. Bibbs*, 660 S.W.2d 750, 752 (Mo.App.1983).

Judgment affirmed.

All concur.