STATE of Missouri, Respondent,

v.

Donald Ray DAVIDSON, Appellant.

No. 30016.

Missouri Court of Appeals, Western District.

April 30, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 11, 1979.

Gerald M. Handley, Kansas City, for appellant on appeal only.

John D. Ashcroft, Atty. Gen., Earl W. Brown, III, Sp. Asst. Atty. Gen., Kansas City, for respondent.

Before HIGGINS, Special Judge, Presiding, SWOFFORD, C. J., and WELBORN, Special Judge.

HIGGINS, Special Judge, Presiding.

Appeal from judgment on convictions by a jury of two counts of robbery, first degree, and one count of armed criminal action. Appellant complains of the judge's failure to disqualify himself, and charges the court erred in failure to quash the indictment, receipt of testimony from unendorsed witnesses, and refusal of specific questions on voir dire. Affirmed.

Appellant does not question the sufficiency of evidence to support his convictions; and he states evidence which would permit a jury to find: that on May 16, 1977, he and five other persons, some of whom were armed, forcibly entered the home of Jessie M. and Clare L. Combs in Kansas City, Missouri; and that both Mr. and Mrs.

Combs were assaulted, their home was ransacked, and several items of personal property including Mrs. Combs's diamond engagement ring and Mr. Combs's wallet were taken.

Appellant contends (II) the court should have quashed the indictment in that defendant "presented a prima facie case of a system of selection of grand jurors, in Jackson County, which amounted to an illegal exclusion of minorities, which thereby denied * * * his right to a grand jury drawn from a reasonably representative cross-section of society as guaranteed him by the 6th and 14th Amendments to the United States Constitution." He asserts that Jackson County's selection procedure "amounts to a 'key man' system, * * * not reasonably representative of a fair cross-section of the community," in that lower income persons, Negroes, Mexican-Americans, women, and persons residing in the inner city area "are systematically excluded from grand jury service."

■ The burden on an inquiry of this kind is initially on the defendant, and it does not shift to the state until the defendant makes out a prima facie case of illegal selection of jurors. *State v. Mooring*, 445 S.W.2d 303 (Mo.1969). See also *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); *Alexander v. Louisiana*, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *State v. Carter*, 572 S.W.2d 430 (Mo. banc 1978).

The grand jury in question was drawn pursuant to Sections 497.260 and 497.270, RSMo 1969. Their validity is not in question. See *State v. Toney*, 537 S.W.2d 586, 595 (Mo.App.1976); *State v. Johnson*, 539 S.W.2d 493, 511 (Mo.App.1976). Section 497.260 directs the circuit judges to select the names of six hundred persons suited for grand jury service and deposit them in a grand jury wheel to be drawn as needed by the jury commissioner. Section 497.270 provides that the names thus drawn shall not be less than the number needed, and that the judge of a criminal division shall select twelve grand jurors to serve from the number so drawn.

■ Defendant presented two witnesses on his Motion to Quash Grand Jury Indictment.

Kevin Locke, an attorney with the Public Defender's Office, testified that he made a survey of the names of the six hundred persons placed in the wheel from which the 1977 grand jury which indicted defendant was drawn. By use of a 1970 census tract map of Jackson County and a road map of Kansas City he platted by tract number locations of the six hundred prospective grand jurors in the county; he could not say "what percent of the people lived where in the county." From his "raw data" compilations and his seven years' residence in Kansas City, he indicated the tracts in which he believed the black population resided; the number of prospective grand jurors from this area was 275. He gave his judgment on the approximate area of residence of the Hispanic-American population in the city. He made no other compilations or computations, particularly with respect to race, nationality, or economic status, and was unable to tell "what the arrangement was according to sex." There was no projection to 1977 of 1970 census data.

John Fitzgerald, Jury Commissioner for Jackson County, testified[1] that he made a survey of the sex and nationality of the persons included in the 1977 grand jury wheel and the information was transformed to a computer print-out "determining their address, city, division that submitted their name and their sex and race, or if it's unknown, it's also determined that it's unknown." He identified a compilation of the 36 names to be called from the original 600 for service on the grand jury. He also referred to computer compilations to show that the grand jury wheel in 1977 was 60% white male, 21% white female, 10% black male, 4% black female, and 5% unknown; and that the 36 persons called for grand jury service in 1977 were 67% white male, 11% white female, 11% black male, and 11% unknown. There were no such projections on the 12 persons who constituted the grand jury which indicted defendant, and there

1. From *State v. Myron Blydenburgh*, CR 77 0732, W.D. 30,195.

were no figures showing the population of Jackson County by race, nationality, sex, or economic status.

■ The foregoing fails to show a prima facie case of deliberate, systematic, or otherwise illegal selection of grand jurors or exclusion of potential grand jurors. Compare *Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967), where the jury was selected from county tax digests which by law were kept on a segregated basis; *Alexander v. Louisiana*, supra, where 7,374 questionnaires went to prospective jurors seeking information as to race, after which the commissioners "culled out" about 5,000 questionnaires, resulting in a drop in percentage of available blacks in the wheel from 13.6% to 6.75% and to 5% in the venire, or 0% on the grand jury itself; *Castaneda v. Partida*, supra, and prima facie case of illegal exclusion, where the "key man" selection system in Texas resulted in selection for grand jury service over an 11-year period of but 39% Mexican-American persons in a county where the Mexican-American population was 79.1%, and *Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970), where a prima facie case was shown in that the judge had discretion to exclude from the jury commission anyone deemed not "discreet," the commission had the further power to eliminate anyone it found not "upright" and "intelligent," and 96% of potential jurors eliminated were Negroes in a county 60% Negro, resulting in a grand jury of 17 white and 6 black persons. Note that a particular grand jury need not be a mirror of the community from which it is drawn, nor need it reflect perfect proportions of each identifiable group in the community. *United States v. Zirpolo*, 450 F.2d 424, 429 (3rd Cir. 1971); *Swain v. Alabama*, 380 U.S. 202, 208, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). See also *Taylor v. Louisiana*, 419 U.S. 522, 530, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

■ Appellant contends (I) the court should have sustained defendant's motion to recuse all circuit judges of Jackson County where the defendant had filed such motion in conjunction with his motion to quash the grand jury indictment, in that "the grand jury was improperly selected and the trial court judge had participated in the selection of the grand jury, and was an interested party and potential witness" with respect to the motion to quash.

This contention does not present the ground for disqualification of judge upon affidavit of inability to have a fair and impartial trial by reason of the interest or prejudice of the judge as envisioned by Rule 30.12, or the disqualification on account of bias or prejudice concerning a party, personal knowledge of disputed facts, or interest in outcome of proceeding as envisioned by Rule 2, Canon 3C(1)(a)(d)(ii) (iii). It is tied to the grand jury question ruled adversely above, and fails accordingly.

■ Appellant's contention (III) with respect to unendorsed witnesses is that he filed a Motion for Discovery pursuant to Rule 25.32, and learned for the first time during opening statements that Detective Schwieterman would give evidence of fingerprint identification which had not been revealed to defense counsel.

This contention fails because there is no motion pursuant to Rule 25.32 in the transcript, *State v. Lawhorn*, 574 S.W.2d 455, 458 (Mo.App.1978); and the record shows that the court offered the defense time to examine Detective Schwieterman in advance of his testimony and the offer was declined, *State v. Maxie*, 513 S.W.2d 338 (Mo.1974).

Appellant does not argue violation of Rule 24.17 which provides for endorsement of witnesses. In such event, the court's action was within the discretion accorded the court with respect to late endorsement of witnesses. *State v. Cobb*, 444 S.W.2d 408, 415 (Mo. banc 1969); *State v. Panter*, 536 S.W.2d 481, 484 (Mo.App.1976). There is no showing of prejudice by reason of the late endorsement. *State v. Goodpaster*, 438 S.W.2d 256, 257 (Mo.1969).

■ Appellant contends (IV) the court abused its discretion in refusal of defendant's request to ask each venireman (1) whether he had ever been accused of something he had not done; (2) whether he

**212**

would be willing to remain as long as it takes to bring in a verdict one way or the other; (3) whether he had ever been mistaken for another or mistaken another for someone else; (4) whether he is an active churchgoer; and (5) whether he would accord fellow jurors the right to their own opinions. Appellant argues that he was prejudiced because he had to exercise peremptory challenges in lieu of opportunity to question for purpose of uncovering prejudices and disinterest of the panel.

Appellant acknowledges that control of voir dire examination rests in the discretion accorded the trial court subject to interference on appeal only where the record shows manifest abuse of discretion and probability of injury to the complaining party. *State v. Scott*, 515 S.W.2d 524, 527 (Mo.1974); *State v. Clark*, 509 S.W.2d 740, 742 (Mo. App.1974). The record shows that the court offered leave to defendant to put his questions to the panel generally, and that defendant refused the offer. Such situation does not suggest an abuse of discretion. Compare the contrary result in *State v. Brown*, 547 S.W.2d 797 (Mo. banc 1977), where the refused question involves defendant's right of self-defense.

Judgment affirmed.

All concur.