STATE of Missouri, Respondent,

v.

Bernard GRANT, Appellant.

No. WD 36491.

Missouri Court of Appeals,
Western District.

Nov. 12, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Dec. 24, 1985.

Application to Transfer Denied Feb. 18, 1986.

Sean D. O'Brien, Public Defender, David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before DIXON, P.J., and SOMERVILLE and NUGENT, JJ.

NUGENT, Judge.

Defendant Bernard Grant appeals his convictions of first degree assault and armed criminal action. He challenges the sufficiency of the evidence and complains of errors in the trial court's refusal to allow him to ask a certain question on voir dire and of errors in the court's rulings on certain comments made by the prosecutor during his opening statement and summation. We affirm.

Defendant was tried for crimes committed during two separate incidents. Counts I and II charged him with the December 21, 1983, armed robbery of Calvin Clark and armed criminal action. Counts III and IV charged defendant with assault for the February 29, 1984, shooting of Mr. Lonzo Lonberger and armed criminal action connected with the assault. The jury acquitted defendant of the robbery offenses but convicted him of the assault offenses. The court sentenced him to fifteen years on each count.

In assessing the sufficiency of the evidence, we accept as true all the evidence that supports the verdict and all reasonable inferences to be drawn from it. *State v. Morgan*, 592 S.W.2d 796, 805 (Mo.1980) (en banc). The evidence that tends to prove defendant's guilt follows.

On the evening of December 21, 1983, Mr. Lonzo Lonberger was one of several victims of a robbery at Clark's Restaurant. About eight o'clock Mr. Lonberger was playing a game of cards when three men burst through the doors of the restaurant

and told everyone to "get on the floor." All three men were wearing long coats and ski masks; two of whom were carrying pistols while one carried a rifle. The men then approached various persons in the room and seized their wallets, money, and jewelry. As the man with the rifle approached Mr. Lonberger, he said, "I got Lonzo. I'll take care of Lonzo." The man spoke to Lonzo and said, "I told you ... that I was going to get you. Where is that ring, where's the money?"

Mr. Lonberger recognized the voice of the man with the rifle as that of a gambler known as "Preacher Man." His suspicions were confirmed when the robber spoke to him. He explained that he had seen "Preacher Man" on several occasions in different gambling joints and that on at least one of those occasions he had worn his $18,000 diamond ring. One month before the robbery, while gambling at Ellis', a gambling house on Vine Street, Lonberger and "Preacher Man" had an argument. "Preacher Man" had threatened Lonberger, "I'll get you old man, I'll get you sooner or later. I'm going to take everything you've got."

The police took this information and later discovered that the true name of the man known as "Preacher Man" was Bernard Grant. Detective Guffey then showed five photographs to Mr. Lonberger and Mr. Clark, another victim of the December 21 robbery. Both men selected the photo of Bernard Grant as the man they knew as "Preacher Man." On January 14, 1982, Detective Guffey arrested the defendant at "Bernard Variety," a store defendant owned. When arrested, the defendant said, "Anyone who say that they saw my face committing a robbery is a ... liar." The defendant also denied knowing any of the robbery victims except Lonzo. He said that he knew Lonzo from gambling with him on Vine Street and that he last saw him about a month and a half before.

On February 1, 1984, Mr. Lonberger and Mr. Clark went to the courthouse for the defendant's preliminary hearing. Mr. Lonberger was called up to the bench, and he informally identified the defendant as the man who robbed him. At that time, the defendant waived his preliminary hearing; he was released on bond a day later.

Following the preliminary hearing, Mr. Lonberger met the defendant at the entrance to Mr. Lonberger's son's apartment building on two occasions. The defendant was accompanied by a man whom Lonberger had never seen before, a tall, slim, lighter-skinned black man. On the first occasion, the defendant said, "How you doing?" and Lonberger answered, "How you doing?" as they passed each other in the entryway. The second occasion was much like the first, and Mr. Lonberger passed by the defendant and his friend without incident.

At about one o'clock in the morning on February 29, 1984, Mr. Lonberger went to visit his son and the boy's mother. When he entered the apartment building, he again met Bernard Grant and his companion. The three men reached the doorway at the same time. As the defendant and his friend were leaving the building they said, "How you doing?" to Lonberger. He answered "The same," and then turned to let defendant pass on his right and turn to his left. He felt the defendant grab his collar and then felt a gunshot which shook his whole body. He identified the defendant as the man who grabbed and shot him. As the two men fled, he heard another shot. Stunned, he looked at his arm and decided to try to get to the hospital.

Lonberger asked a young man who was walking nearby to help him to his car and drove to Truman Medical Center. The .45 caliber bullet went through Lonberger's right arm and then entered the right side of his abdomen. That night the bullet was surgically removed.

Two uniformed policemen came to the hospital that night to interview Lonberger. He told them that he did not know who had shot him. At trial he explained that he was afraid to name his assailant while he was lying helpless in the hospital. He remained in the hospital for five days. The day he was released, he telephoned Detective Guf-

fey, told him what had happened and identified the defendant as the man who shot him.

At trial, concentrating on defending the robbery charges, defense counsel called several alibi witnesses who testified that they saw the defendant at his variety store on the evening of December 21. The defendant testified that he did not rob Calvin Clark and that the first time he saw the man was at his preliminary hearing. He admitted that he had known Mr. Lonberger all his life, had seen his diamond ring and had seen him many times at various gambling houses, including Ellis' on Vine Street. He denied, however, ever telling Lonberger that he was "going to get him." He also denied ever being in Lonberger's son's apartment building and said that at one o'clock in the morning on February 29 he was at home in bed.

During voir dire of the venire, defense counsel asked the panel, "Is there anyone here that's ever been accused of something, either by their mother or anyone else, about something that you didn't do?" The prosecutor objected to this question stating that the accusations should be limited to those made by law enforcement officials; the trial judge overruled the objection. Defense counsel then stated, "I take it everyone has had that experience. Now, Mr. Nelson, you were one that raised your hand. How did that make you feel when you were accused of something you didn't do?" The prosecutor again objected and stated that he thought the question was only remotely related to the circumstances of the case. This time, the court sustained the objection. Defense counsel said, "Okay," and went on to another subject.

During his opening statement, the prosecutor first described the building where the robbery occurred. He then described the robbery itself and Lonzo Lonberger's testimony. He then mistakenly stated that Mr. Lonberger testified against the defendant at the defendant's preliminary hearing. Defense counsel objected and informed the court that the defendant had waived his preliminary hearing. The prosecutor explained that he believed there had been a preliminary hearing because Mr. Lonberger had told him that he testified under oath before the court on that date. The court's file reflected that defendant had indeed waived the preliminary hearing. Defense counsel requested a mistrial which was denied. The court then instructed the jury that the last objection had been sustained and to disregard the prosecutor's last statement.

During the rebuttal portion of his summation, the prosecutor first reminded the jury that none of the defendant's alibi witnesses had been questioned about the December robbery until April of 1984. He then pointed out inconsistencies in and stressed the incredibility of their testimony. Next he summarized the state's evidence and emphasized the reliability of Mr. Lonberger's testimony. Finally, the prosecutor underscored the crime rate in the black community and concluded as follows:

Your obligation, based on this evidence, is to find this man guilty, but I think you have got to do more than that. He's guilty of robbery and he should get twenty years, ten for the armed criminal action, life for the assault because he tried to take a life, and ten years for the armed criminal action.... That's my judgment based on this case. Thank you.

### I. *Sufficiency of the Evidence*

On appeal the defendant claims that the trial court erred in accepting the jury's verdict and overruling his motion for acquittal. He argues that the state's evidence was insufficient as a matter of law to prove that he was the man who fired the gun or to permit a rational trier of fact to find guilt beyond a reasonable doubt. We disagree.

The defendant correctly observes that Mr. Lonberger was the only witness to identify the defendant as his assailant in the February assault. He then contends that a careful reading of Lonberger's testimony merely reveals the circumstantial evidence that the defendant was at the scene

of the crime and had an opportunity to commit the crime. Specifically, he argues that the testimony shows only that the three men met at the entryway, that Lonberger was grabbed from behind, and that he never saw which man held and fired the gun. He argues that Mr. Lonberger concluded that the defendant must have shot him based on the mere facts that the defendant passed him on his right side and the bullet struck him on his right side. We do not agree.

Mr. Lonberger testified that he had met, spoken to, and passed Mr. Grant and his lighter-skinned companion in the entryway to this same apartment building on two earlier occasions. Mr. Lonberger said that on the night he was shot he was going to visit his son when the following occurred:

> I stepped in the doorway. The same two negro males, Bernard Grant and the other slim, light-skinned guy met me in the doorway. And we both, all of us got in the doorway about the same time. They were inside the hall evidently. When I got in the hallway, they say, 'How you doing' and I say, 'The same,' and I turned this way (indicating) to let him pass, because Bernard is passing on my right, and he's turning to my left, and then I felt his hand going on to my collar like this (indicating).... When he caught me in the back of the collar, when I felt the hand in the back of my collar, the blast from the gun shook my whole body, and shot me through the arm.

That testimony establishes a factual basis from which the jury could reasonably conclude that Mr. Lonberger knew who shot him. The jury could reasonably infer that when he saw and felt the defendant pass him on his right side, saw the defendant turning to his left and felt the defendant grab his collar, that he was in such close proximity to the defendant that he could perceive that the defendant had shot him, even though he never saw the gun. This inference was peculiarly within the province of the jury which twice saw Mr. Lonberger physically demonstrate the defendant's actions.

During cross-examination, defense counsel asked Mr. Lonberger, "Now, the guy that, the other guy, the one that—you didn't, you don't know which one shot you; do you?" Mr. Lonberger answered, "Yes, I know the one on the right shot me." From this testimony, the jury could reasonably infer that the "light-skinned" man was passing on Mr. Lonberger's left, a position from which that man would have had great difficulty shooting Mr. Lonberger through his right arm and stomach. Moreover, the evidence shows that Mr. Lonberger turned his body to the side to permit defendant Grant to pass on Mr. Lonberger's right and to be behind him. Thus, defendant's companion would have passed on Mr. Lonberger's left side and, therefore, in front of him as he stood sideways in the doorway. The jury could reasonably conclude from those inferences that if defendant's companion had fired the gun, Mr. Lonberger would have seen it.

The defendant also cites *State v. Shaw*, 602 S.W.2d 17, 19 (Mo.App.1980), for the proposition that the circumstantial evidence of the defendant's last known position, the position of the victim and the trajectory of the bullet is not sufficient to prove that the defendant, and not his companion, fired the gun. The defendant, however, misconstrues both the rule in *Shaw* and the evidence in this case.

In *Shaw*, the defendant was tried for the murder of Earl Ashford. The identification of the gunman was based entirely upon circumstantial evidence so that "the circumstantial evidence rule" applied, and the position of the defendant at the time of the shooting was unknown. *Id.* The circumstantial evidence rule governs only those cases founded entirely upon circumstantial evidence. *State v. Biddle*, 599 S.W.2d 182, 192 (Mo.1980) (en banc). Here the state's case is supported by both direct and circumstantial evidence. Mr. Lonberger's testimony describing defendant's movements and acts and identifying him as the gunman is direct evidence of the defendant's guilt. For this reason, *Shaw* is inapposite.

Defendant also argues that the evidence as a whole is insufficient to permit a rational trier of fact to determine guilt beyond a reasonable doubt. In reviewing this question, our role is not to weigh the evidence to determine whether we believe that it established guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *State v. Brown*, 660 S.W.2d 694, 698 (Mo.1983) (en banc). Rather, our role is limited to determining whether the evidence, viewed in the light most favorable to the prosecution, is sufficient to enable any rational trier of fact to find the defendant guilty beyond a reasonable doubt. *Jackson, supra*, 443 U.S., at 319, 99 S.Ct. at 2789; *Brown, supra*, at 699.

The defendant contends that the identity of the defendant as the gunman rests on the testimony of a single witness, Lonzo Lonberger. He cites inconsistencies in his testimony, including his statement made to police officers while he was in the hospital that he did not know who had shot him. He concludes that such testimony is insufficient to support a finding of guilt beyond a reasonable doubt.

When assessing the sufficiency of the evidence, we must accept as true all evidence and inferences that support the verdict and disregard all evidence and inferences to the contrary. *Brown, supra*, at 699; *State v. Bolder*, 635 S.W.2d 673, 679 (Mo.1982) (en banc). In this case, Mr. Lonberger explained the reason for his inconsistent statements. The jury apparently believed and accepted that explanation as it was free to do. A jury may believe all, some or none of the testimony of a witness. The jury here was entitled to accept that part of Mr. Lonberger's testimony that tended to prove defendant's guilt and reject any of it to the contrary. *State v. Holt*, 592 S.W.2d 759, 774 (Mo.1980) (en banc). The well-settled rule that the testimony of a single witness is sufficient to establish the identity of a criminal defendant if the jury believes it beyond a reasonable doubt is particularly applicable here. *Bolder, supra*, at 679; *State v. Williams*, 376 S.W.2d

133, 136 (Mo.1964). When all the evidence is viewed in the light most favorable to the state, we are convinced that a rational trier of fact could find the defendant guilty beyond a reasonable doubt.

## II. *Propriety of Defendant's Voir Dire Questions*

In another point on appeal, defendant Grant asserts that the trial court erred in sustaining the state's objection to defense counsel's question to a member of the venire panel. He asserts that the question was proper because it was used to determine the panel's reaction to defendant's proposed defense. He argues that by limiting his inquiry the court prevented him from discovering any preconceived notions the jury might have held regarding his defense and thereby denied him the right to a fair and impartial jury and a fair trial.

We doubt that defendant has properly preserved this point for appeal, but we need not resolve that question because we hold that the trial court did not err in sustaining the state's objection.

The questioning regarding the defendant's proposed defense commenced when defense counsel asked the panel whether any of them had ever been accused either by their mother or anyone else of something that they did not do. He then selected a venire person who had raised his hand and asked, "How did that make you feel when you were accused of something you didn't do?" The court sustained the prosecutor's objection to the second question and defendant now appeals that ruling.

He argues that the thrust of his defense was that he had been falsely accused of robbery and thus lacked motive to shoot Mr. Lonberger. He asserts that his voir dire question would have enabled him to discover any preconceived notions any venireman may have had regarding false accusation. He concludes that, since the trial court's limitation of his questioning "struck at the heart of his defense" to the assault charge, he was thereby prejudiced and is entitled to a new trial. We disagree.

Defendant asserts that his first question was proper, citing *State v. Davidson*, 583 S.W.2d 208 (Mo.App.1979). However, in that case the trial court's refusal to permit defense counsel to ask each venire member whether he had ever been accused of something that he did not do was upheld. In any event, the trial judge here allowed defendant to ask the panel the first question, therefore, *Davidson* is not helpful.

■ The defendant also urges that Missouri law allows a liberal latitude in the examination of prospective jurors. But that rule must be put in context with the purpose of voir dire examination. That purpose is to enable each party to develop facts which might be useful in detecting bias so that he may intelligently use his challenges. *State v. Smith*, 649 S.W.2d 417, 428 (Mo.1983) (en banc). *State v. Granberry*, 484 S.W.2d 295, 299 (Mo.1972) (en banc). The trial court supervises the inquiry, and the nature and extent of questions that counsel may ask are discretionary with that court. *Smith, supra; State v. Reed*, 629 S.W.2d 424, 426 (Mo.App. 1981). We will disturb a trial court's ruling only when the record shows a manifest abuse of that discretion coupled with a real probability of injury to the complaining party. *Smith, supra; State v. Bannister*, 680 S.W.2d 141, 145 (Mo.1984) (en banc).

■ We fail to see, and the defendant does not demonstrate, how the feelings of a particular juror about false accusations by his mother or some other unknown person could be relevant to the facts of this case or helpful to the defendant in exercising his challenges. The trial court did not abuse its discretion in excluding defense counsel's question, which was at best only remotely relevant.

### III. *Denial of Mistrial*

In his third point, defendant alleges that the trial court erred in denying his motion for a mistrial after the prosecutor included remarks in his opening statement at odds with the court records. We disagree.

■ The purpose of the prosecutor's opening statement is to advise the jury of the facts the state expects to prove and to inform the defendant of the contemplated course of the prosecution. *State v. Browner*, 587 S.W.2d 948, 953 (Mo.App.1979); *State v. Underwood*, 530 S.W.2d 261, 263 (Mo.App.1975). When the prosecuting attorney has reasonable grounds to believe that the facts stated can be proved, the statement is not improper. *State v. White*, 610 S.W.2d 646, 649 (Mo.App.1980); *Underwood, supra*.

In the case at bar, the prosecuting attorney's remark that Mr. Lonberger testified against Bernard Grant in the preliminary hearing was incorrect. However, the prosecutor explained to the court that Lonberger had told him when he came to the court that they put him under oath and asked him about the incident. In any event, the court sustained counsel's objection and instructed the jury to disregard the last statement by the prosecutor. At trial, Mr. Lonberger testified that he had, indeed, come to court and that he and Mr. Grant were called before the judge. He then told the judge what had happened the night of the robbery.

■ The question whether improper statements of the prosecutor are so prejudicial that they require a discharge of the jury is one resting largely in the trial court's discretion. *State v. Berry*, 526 S.W.2d 92, 102 (Mo.App.1975). In light of Mr. Lonberger's later testimony, any prejudice to defendant created by the prosecutor's statement was cured by the trial court's instruction. Therefore, the trial court correctly denied defendant's motion for a mistrial.

### IV. *Prosecutor's Expression of Opinion*

Finally, defendant claims that the trial court erred in denying his motion for mistrial after the prosecutor commented in the rebuttal portion of his summation, "That's my judgment based on this case." We disagree.

Defendant asserts that the prosecuting attorney may not express his opinions or private knowledge of the defendant's guilt. But, the defendant has omitted a crucial portion of the rule. *State v. Haynes,* 528 S.W.2d 11, 13 (Mo.App.1975). A complete statement of the rule is that the prosecutor may not "express to the jury in argument his belief of defendant's guilt in such a way that it implies knowledge on his part of facts not in evidence, pointing to defendant's guilt." *State v. Moore,* 428 S.W.2d 563, 565 (Mo.1968). Belief of guilt may be stated where the opinion appears to be fairly based on the evidence. *State v. Jackson,* 499 S.W.2d 467, 471 (Mo.1973); *Moore, supra; see also State v. Newlon,* 627 S.W.2d 606, 617 (Mo. 1982) (en banc).

Here, in closing, the prosecutor first summarized the state's evidence. He then noted the incredibility of defendant's alibi witnesses and emphasized the reliability of Mr. Lonberger's testimony. Next he stressed the need for law and order in the black community and urged the jury to find the defendant guilty based on the evidence. Finally, he recommended specific sentences for each crime charged and concluded, "That's my judgment *based on this case.*"

The prosecutor was merely indicating a belief drawn directly from the evidence. His statement was one that a trial court might permit in exercise of its discretion. In any event, the court sustained counsel's objection and instructed the jury to disregard the prosecutor's remark. Even if the remark was improper, it was not so egregious as to warrant a mistrial.

For the foregoing reasons, we affirm the judgment.

All concur.