**Lyndall Clarence SHIVE, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 16228.**

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 13, 1989.

Motion for Rehearing and Transfer
to Supreme Court Denied Nov. 27, 1989.

Gary M. Wilson, Asst. Public Defender, Springfield, for appellant.

William L. Webster, Atty. Gen., Daryl R. Hylton, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

Lyndall Clarence Shive ("movant") appeals from an order denying relief in an action brought by him under former Rule 27.26[1] to vacate his conviction, per jury trial, of two counts of sale of a controlled substance, for which he was sentenced to consecutive 12–year prison terms. The conviction was affirmed on direct appeal. *State v. Shive*, 621 S.W.2d 715 (Mo.App. 1981).

In denying relief in the 27.26 proceeding the circuit court, henceforth referred to as "the motion court," conducted an evidentiary hearing and thereafter made findings of fact and conclusions of law.

The first of movant's three points on appeal avers the motion court wrongly denied relief in that (a) the felony information on which movant was tried was fatally defective, and (b) the lawyer who represented movant at trial, henceforth referred to as "defense counsel," rendered ineffec-

---

1. Rule 27.26 was repealed effective January 1, 1988. Missouri Rules of Court (19th ed. 1988), p. 142. Movant's action continues to be governed by former Rule 27.26, as movant's sentences were pronounced prior to January 1, 1988, and his motion to vacate such sentences was pending prior to January 1, 1988. Rule 29.15(m), Missouri Rules of Criminal Procedure (19th ed. 1988).

tive assistance in failing to challenge the validity of the information.

Count I of the information alleged that movant, in violation of § 195.020, RSMo 1978, committed the felony of sale of methamphetamine, punishable under § 195.200, RSMo 1978, in that on or about March 11, 1979, he sold methamphetamine to one Richardson.

Count II of the information alleged that movant, in violation of § 195.240, RSMo 1978, committed the felony of sale of methamphetamine, punishable under § 195.270, RSMo 1978, in that on or about March 11, 1979, he sold methamphetamine to one Bickers.

The information further alleged movant was a persistent offender by reason of four earlier felony convictions, and was consequently subject to an extended term of imprisonment under § 558.016.

As Count I pled the sale of methamphetamine was in violation of § 195.*020*, punishable under § 195.*200*, while Count II pled the sale of methamphetamine was in violation of § 195.*240*, punishable under § 195.*270*, there are obviously mistakes somewhere.

Section 195.020, RSMo 1978, provided:

"It is unlawful for any person to … sell … any controlled … substance except as authorized in sections 195.010 to 195.320…."

Section 195.200, RSMo 1978, established the range of punishment for violations of chapter 195 pertaining to controlled substances in Schedules I and II.

Section 195.240, RSMo 1978, provided:

"The … sale … of any controlled substance listed in Schedules III, IV, or V … is unlawful, except in the usual course of business or practice, or in the performance of their official duties by the following persons:

[Here the statute listed sundry categories of persons.]"

Section 195.270, RSMo 1978, established the range of punishment for violations of § 195.240. The maximum punishment was ten years' imprisonment.

■ Movant asserts that at the time of the two sales with which he was charged, methamphetamine was a Schedule III controlled substance. Movant refers us to § 195.017.6, RSMo 1978, which provided:

"(1) The controlled substances listed in this subsection are included in Schedule III.

(2) Any material, compound, mixture, or preparation which contains any quantity of the following substances having a potential for abuse associated with a stimulant effect on the central nervous system:

. . . .

(c) Any substance which contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers;

. . . ."

Section 195.017 was originally enacted in 1971. Laws 1971, S.C.S.H.C.S.H.B. 69, pp. 237–60, effective September 28, 1971. It was carried forward unchanged in RSMo 1978, and was in effect when the two sales in question occurred (March 11, 1979). It thus appears, without further study, that movant is correct in asserting methamphetamine was a Schedule III controlled substance at the time he is alleged to have sold it.

However, § 195.015 (also originally enacted in 1971 by the legislation identified in the preceding paragraph, and carried forward unchanged in RSMo 1978) provided:

"4. If any substance is designated, rescheduled, or deleted as a controlled substance under federal law and notice thereof is given to the division of health, the division of health shall similarly control the substance under sections 195.010 to 195.320 after the expiration of thirty days from publication in the federal register of a final order designating a substance as a controlled substance or rescheduling or deleting a substance, unless within that thirty-day period, the division of health objects to inclusion, rescheduling, or deletion. In that case, the division of health shall publish the reasons for objection and afford all interested parties an opportunity to be heard. At the conclusion of the hearing, the

division of health shall publish its decision, which shall be final unless altered by statute...."

In *State v. Winters*, 525 S.W.2d 417 (Mo. App.1975), the accused was convicted of an amphetamine sale that occurred November 14, 1972. At that time § 195.017.6(1) and (2)(a), RSMo Cum.Supp.1971, listed amphetamine as a Schedule III controlled substance. The accused was sentenced, however, under § 195.200.1(4), which pertained to violations involving Schedule I and II controlled substances. The trial court imposed sentence relying on a regulation promulgated by the Division of Health dated October 4, 1972, which classified amphetamine as a Schedule II controlled substance per the authority conferred by § 195.015.4, quoted above. On appeal the accused maintained he was sentenced under the wrong statute. The appellate court disagreed, stating:

"Effective July 7, 1971, the Federal Director of the Bureau of Narcotics and Dangerous Drugs, under the authority of 21 U.S.C. § 811, rescheduled amphetamine from Schedule III to Schedule II of the Federal Drug Abuse Act. 36 F.R. 12735 (1971). This action authorized the Missouri Division of Health to act under § 195.015, subd. 4...." 525 S.W.2d at 421.

The order of July 7, 1971, by the Director, Bureau of Narcotics and Dangerous Drugs, referred to in the above excerpt from *Winters*, appears at 36 Fed.Reg 12734–36 (1971). That order, in addition to transferring amphetamine from Schedule III to Schedule II under the Comprehensive Drug Abuse Prevention and Control Act of 1970, also transferred methamphetamine from Schedule III to Schedule II under the same Act.

The Division of Health, pursuant to the order identified in the preceding paragraph, likewise rescheduled methamphetamine as a Schedule II controlled substance. The Division of Health's list of controlled substances in effect at the time of the sales for which movant was convicted was the revision effective February 9, 1979. It appears at 13 CSR 50–130.010.[2] In paragraph (1)(B)3.(2) of that list methamphetamine is classified as a Schedule II controlled substance.

■ It is thus clear that at the time of the two sales in the instant case, selling methamphetamine was a violation of § 195.020, RSMo 1978, punishable under § 195.200, RSMo 1978. Those are the two statutes cited in Count I of the information. Count I was therefore correct. As Count II did not mention those two statutes, but instead cited two statutes pertaining to Schedule III controlled substances, Count II was obviously erroneous in that respect. The question thus becomes whether that error rendered Count II fatally defective.

■ The test of the sufficiency of an information is whether it contains all the essential elements of the offense as set out in the statute and clearly apprises the accused of the facts constituting the offense in order to enable him to meet the charge and to bar further prosecution. *State v. Strickland*, 609 S.W.2d 392, 395[7] (Mo. banc 1980).

In *State v. Umfleet*, 587 S.W.2d 612 (Mo. App.1979), the information charged the accused with selling lysergic acid diethylamide, a Schedule I controlled substance. The caption of the information listed the applicable statutes as §§ 195.200 and 195.240. The former was the correct penalty section, but the latter was the incorrect conduct section, as it dealt with controlled substances in Schedules III, IV and V. The caption should, of course, have shown § 195.020 as the conduct section. On appeal the accused argued the trial court lacked jurisdiction in that the error rendered the information fatally defective.

The Eastern District of this Court rejected the argument, holding that under Rule 24.11, Missouri Rules of Criminal Procedure (10th ed. 1979), no information should be held invalid which does not prejudice the accused's substantial rights so long as it fully informs him of the offense charged.

2. CSR refers to the Code of State Regulations, the contents of which we may judicially notice.

§ 536.031.5, RSMo 1986; *State v. Webb*, 646 S.W.2d 415, 417 (Mo.App.1983).

587 S.W.2d at 617. As the information in *Umfleet* plainly charged the accused with selling lysergic acid diethylamide, there could have been no doubt as to what offense was charged. *Id.* Additionally, the penalty section appearing in the caption was the section pertinent to Schedule I and II controlled substances. *Id.* As the information notified the accused of the charged offense and constituted a bar to further prosecution for that offense, it was sufficient. *Id.*

Rule 24.11, relied on in *Umfleet*, was in effect at the time of the offenses charged against movant. By the time of movant's trial, November 17–18, 1980, the subject matter of that rule had been moved to Rule 23.11, Missouri Rules of Criminal Procedure (11th ed. 1980), which provided:

> "No ... information shall be invalid, nor shall the trial, judgment, or other proceedings thereon be stayed, because of any defect therein which does not prejudice the substantial rights of the defendant."

Movant acknowledges the holding in *Umfleet*, but attempts to distinguish it from the instant case by pointing out that in *Umfleet* the caption of the information cited the correct penalty section. In the instant case both the conduct section and the penalty section cited in Count II were wrong.

In *Hulstine v. State*, 702 S.W.2d 120 (Mo.App.1985), a prisoner brought an action under former Rule 27.26 to vacate his conviction of first degree murder. He maintained the information was defective because, among other things, it failed to cite the statute alleged to have been violated and the statute which fixed the punishment.

Applying Rule 23.11, quoted above, and the test for sufficiency of an information in *Strickland*, 609 S.W.2d at 395[7], referred to earlier in this opinion, this District of the Court of Appeals affirmed the circuit court's denial of relief in *Hulstine*. The opinion emphasized that inasmuch as the information set out the elements of first degree murder and the prisoner had failed to show he was prejudiced by the failure of the information to cite the statute violated and the statute fixing punishment, his claim that the information was fatally defective was without merit. 702 S.W.2d at 122–23[7].

In the instant case the State's evidence showed that the two sales of methamphetamine for which movant was convicted occurred on the same date at the same site, one sale immediately following the other. Movant's testimony at trial was that he was present when the sales occurred but they were made by one Cookie Blevins (of which more later). At the hearing in the motion court movant was a witness, but he presented no testimony as to how Count II's failure to cite the correct conduct and penalty statutes prejudiced him.

The motion court, in its findings of fact and conclusions of law, rejected movant's complaint about the information, holding that movant was sufficiently informed of the charges against him and had failed to show how he was prejudiced by the errors in Count II. The motion court found that except for the erroneous citation of the two statute numbers, Count II clearly charged movant with sale of methamphetamine and thereby informed him of the illegal conduct of which he was accused.

Our review is limited to a determination of whether the findings, conclusions, and judgment of the motion court are clearly erroneous. Rule 27.26(j); *Futrell v. State*, 667 S.W.2d 404, 405[1] (Mo. banc 1984).

■ A collateral attack on a conviction on the basis of an alleged defective information will succeed only if the information is so obviously defective that by no reasonable construction can it be said to charge the offense for which the prisoner was convicted. *Hulstine*, 702 S.W.2d at 122[4]; *Franklin v. State*, 655 S.W.2d 561, 563[4] (Mo.App.1983).

Each count of the information in movant's case contained all essential elements of the offense charged and clearly apprised movant of the facts constituting the offense in order to enable him to meet the charge. Movant does not contend otherwise. Additionally, each count was suffi-

cient to bar further prosecution. Movant's contention that Count II was fatally defective because it cited the erroneous conduct and penalty statutes is consequently without merit.

■ Movant also maintains in his first point that the information improperly invoked § 558.016 to enhance his punishment. Movant asserts § 558.016 does not apply to any crime where the statute defining the crime contains its own provisions for enhanced punishment for repeated violations. Movant points out that § 195.200, RSMo 1978, contained enhancement provisions for repeated offenses involving controlled substances in Schedules I and II. Movant adds that the range of punishment established by § 195.270, RSMo 1978, for offenses involving controlled substances in Schedules III, IV and V (imprisonment in the penitentiary for not less than two years nor more than ten years, or confinement in jail for not more than one year, or a fine of not more than $1,000, or both the fine and confinement) "does not plug into the scheme of specific graded felonies reserved for [§ ] 558.016."

We need not, in this appeal, consider those complaints inasmuch as neither of movant's sentences was enhanced.

The trial court, in its verdict-directing instructions on each count, submitted the issue of guilt or innocence *and* the issue of punishment to the jury. The jury, in its verdict of guilty on each count, assessed movant's punishment at 12 years' imprisonment. Those sentences were within the range of punishment established by § 195.200.1(4), RSMo 1978—the correct punishment statute—which provided for imprisonment for a term of not less than five years nor more than life imprisonment.

The trial court, in a hearing subsequent to the verdicts, found movant was a persistent offender, but made no attempt to impose sentences in excess of those assessed by the jury. The trial court did order the sentences to run consecutively, but the trial court was authorized to do that without employing the persistent offender procedure. § 558.026.1, RSMo Supp.1980.

As movant's sentences were assessed by the jury and were not enhanced by the trial court, movant suffered no prejudice from the allegation in the information that he was a persistent offender.

As none of movant's attacks on the information in his first point are meritorious, it follows that movant is entitled to no relief on the ground that defense counsel rendered ineffective assistance in neglecting to challenge the validity of the information on such grounds. Movant's first point is denied.

Movant's second point avers the motion court wrongly denied relief in that movant was sentenced under § 195.200.1(4), RSMo 1978, the section establishing the range of punishment for violations of chapter 195 pertaining to controlled substances in Schedules I and II. Movant maintains the correct punishment statute was § 195.270, RSMo 1978, the section establishing the range of punishment for offenses involving controlled substances in Schedules III, IV and V. Under the latter section, as we have seen, the maximum permissible punishment was ten years' imprisonment. Movant's second point also charges defense counsel with ineffective assistance in "allowing movant to be subjected to an unauthorized sentence."

The point is predicated on the assumption that methamphetamine, at the time of the two sales in question, was a Schedule III controlled substance. We have rejected that premise in our denial of movant's first point, and have held that methamphetamine, at all times pertinent here, was a Schedule II controlled substance. We have also held that § 195.200.1(4), RSMo 1978, was the correct punishment statute for the offenses of which movant was convicted. As movant's sentences were within the range of punishment established by that statute, movant's second point is patently without merit.

■ Movant's final point reads:

"The [motion] court erred ... when it denied ... relief after an evidentiary hearing when the preponderance of the evidence presented demonstrated that

[defense counsel] rendered ineffective assistance ... in that he failed to secure a material witness for trial that was willing to testify in movant's behalf and would have provided testimony that would have served to exonerate movant and that the securing of said witness could have been accomplished had [defense counsel] exercised reasonable diligence."

At the jury trial the two methamphetamine purchasers (troopers Richardson and Bickers of the Missouri State Highway Patrol, working undercover) testified they went together to the apartment of Cookie Blevins, and waited there with her until movant arrived. Each trooper testified he purchased a packet of methamphetamine from movant. As reported earlier in this opinion, movant's testimony at trial was that he was present when the sales occurred but they were made by Ms. Blevins. She was not presented as a witness by either side at trial.

In his 27.26 motion, movant alleged Ms. Blevins would have been willing to testify at his trial that she sold the methamphetamine. At the evidentiary hearing in the motion court movant testified Ms. Blevins was an "accessible witness" at time of trial but defense counsel failed to secure her testimony.

Ms. Blevins testified as a witness for movant in the motion court. The substance of her testimony was that she, not movant, sold the methamphetamine to the two troopers. Ms. Blevins added that prior to movant's trial someone—she was unsure who—asked her by phone to testify for movant. According to Ms. Blevins, "[S]omebody would come and pick me up and they never did show up."

During Ms. Blevins' cross-examination in the motion court this dialogue occurred:
"Q ... Can you give the year this happened?
A '79.
Q '79. Was it approximately nine years ago? Is that right? [3]
A (Nods head)

**3.** The hearing in the motion court took place

. . . .
Q Have you ever heard of the term statute of limitations?
A Yes.
Q So you know what that means, don't you?
A Yes.
Q How do you know about that, who told you about it?
A A lawyer.
Q What's his name?
A I found out about the statute of limitations years ago."

The motion court, in rejecting movant's claim that defense counsel rendered ineffective assistance in failing to present Ms. Blevins as a witness at trial, found:

"This Court concludes that Movant failed to meet his burden under 27.26(f) in that he failed to produce any credible evidence on this allegation. Cookie Blevins' testimony must be suspect due to her response and indicated knowledge [of] the statute of limitations."

■ A prisoner claiming ineffective assistance of counsel on the ground that counsel failed to present a certain witness' testimony must prove that the witness could have been located through reasonable investigation, that the witness would have testified if called, and that the witness' testimony would have provided a viable defense. *Lockhart v. State*, 761 S.W.2d 634, 635[4] (Mo.App.1988); *Hogshooter v. State*, 681 S.W.2d 20, 21[2] (Mo.App.1984).

The motion court took judicial notice of the transcript of movant's jury trial. During his opening statement to the jury, defense counsel said: "Now, Miss Cookie Blevins, by the way, is not available, to our knowledge. We've been trying to get her."

Defense counsel's cross-examination of trooper Richardson at movant's trial contained this:
"Q.... If I ask you to find Cookie Blevins right now, do you think you could do it?
A. No, sir."

August 5, 1988.

Richardson's testimony on redirect examination included this:

"Q. And when was the last time you saw Cookie Blevins?

A. Shortly before the arrests in Greene County. Trooper Bickers and I saw Cookie Blevins at the Town House Lounge on Glenstone here in Springfield.

Q. That would have been around February of this year?[4]

A. That's possible. The arrests were on February 14th, I think, and that's sometime before that.

Q. Have you seen her since that time?

A. No."

Trooper Bickers' testimony at trial included this:

"Q. When was the last time you saw this Cookie Blevins?

A. It was late in the Winter of 1980, this year.

Q. And about how long ago was that?

A. It was probably either in January or the first part of February. That was the last time I had seen her.

Q. All right. And whenever you would find her or run across her, where would you find her at?

A. Usually at the Antler Bar or at the Downbeat Bar. It was always in a bar.

Q. Since the last part of January or the early part of February of this year, have you seen this Cookie Blevins?

A. No.

Q. Do you know where she is?

A. No."

As noted earlier, movant's trial occurred November 17–18, 1980. By that time some nine months had elapsed since the troopers had last seen Ms. Blevins.

The motion court was not required to believe Ms. Blevins' testimony that an unnamed individual was to pick her up and take her to court to testify for movant at his trial but failed to do so, nor was the motion court required to believe Ms. Blevins would have testified at movant's trial that she sold the two packets of metham-

phetamine. *Davis v. State*, 748 S.W.2d 698, 700[1] (Mo.App.1988); *Simmons v. State*, 745 S.W.2d 181, 182[2] (Mo.App. 1987).

The fact that Ms. Blevins, at the time of the hearing in the motion court,[5] could testify she sold the methamphetamine without fear of being charged with the sales (the statute of limitations, § 556.036, RSMo 1986, having long since run), coupled with the trial testimony of troopers Richardson and Bickers that they had not seen Ms. Blevins for some nine months before trial and defense counsel's statement to the jury that Ms. Blevins was unavailable, gave the motion court ample cause for skepticism about Ms. Blevins' testimony.

Defense counsel would have been guilty of ineffective assistance in failing to present Ms. Blevins as a witness at movant's trial only if (1) Ms. Blevins was available at the time of movant's trial, and (2) she would have, at that time, testified she sold the methamphetamine. The motion court obviously did not believe that scenario. That was the motion court's prerogative. That being so, the motion court's rejection of movant's claim that defense counsel rendered ineffective assistance in failing to present Ms. Blevins as a witness at movant's trial is not clearly erroneous. Movant's third point is denied and the judgment of the motion court is affirmed.

GREENE, J., and HOLSTEIN, Special Judge, concur.

4. 1980.

5. Footnote 3, *supra*.