**STATE of Missouri,**
**Plaintiff–Respondent,**

v.

**James Kenneth HURTT,**
**Defendant–Appellant.**

**No. 16915.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 12, 1991.

C.R. Rhoades, Neosho, for defendant-appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Chief Judge.

A jury found defendant James Hurtt guilty of delivery of a controlled substance, § 195.211,[1] RSMo Cum.Supp.1990, and he was sentenced, upon findings that he was a prior offender, a persistent offender, and a class X offender to a term of 30 years' imprisonment. Defendant appeals.

■ Defendant's first point is that the second amended information, on which the case was tried, was fatally defective, and the trial court erred in ruling otherwise because the information "did not properly cite the section of the statutes fixing the penalty or punishment for the alleged violation, in violation of Rule 23.01."

In addition to its formal portions, and its allegations of three separate prior felony convictions, the information charged that the defendant "in violation of Section 195.-211, RSMo., committed the Class B Felony of Delivery of Cocaine, a controlled substance, punishable upon conviction under Section 588.011.1(2), RSMo., in that on or about October 3, 1989, in the County of Jasper, State of Missouri, the defendant knowingly delivered to Tammy Cover, Cocaine, a controlled substance."

The challenged information was the third one filed by the prosecutor. The original

information cited, as the punishment statute, § 588.011.1(2). The correct citation would have been § 558.011.1(2). That information made no mention of prior convictions. The first amended information filed by the prosecutor repeated the erroneous citation to § 588.011.1(2), a non-existent statute, and then pleaded three prior convictions in support of its additional allegations that defendant was a prior offender and a class X offender. The challenged information, on which the case was tried, again cited the non-existent statute, pleaded the three prior convictions, and also pleaded that defendant was a persistent offender as well as a prior offender and a class X offender.

The first amended information was filed on February 22, 1990, and the challenged information was filed on February 23, 1990, immediately prior to the commencement of the trial on that day.

Before the jury was selected, a conference took place among the court and the attorneys. Defense counsel informed the court that he had filed a motion to dismiss the first amended information on the ground, among others, that it did not properly cite the section of the statutes fixing the penalty or punishment. The same motion was orally addressed to the challenged information. Strangely, at no time did the prosecutor request leave to amend the challenged information so as to correct the erroneous citation. During the conference, defense counsel stated: "I'll announce to the court with good faith and conscience to [the prosecutor] that I was certainly aware that he was going to file a Class X information."

In denying the motion to dismiss, the court stated that the only difference between the first amended information and the challenged information was that the latter included the allegation that the defendant was a persistent offender.

An information which is substantially consistent with the form prescribed by MACH–CR is, by Rule 23.01(e), deemed to

1. Unless otherwise indicated, all references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

comply with the requirements of Rule 23.-01(b), which sets forth what an information shall contain. The portion of the challenged information which pleaded defendant's status as a prior offender, persistent offender, and class X offender did so in the manner authorized by MACH–CR 2.30.

Rule 23.01(b)4 provides that the information shall "cite the section of the statutes alleged to have been violated and the section of the statutes which fixes the penalty or punishment therefor." Rule 23.11 reads: "No indictment or information shall be invalid, nor shall the trial, judgment, or other proceedings thereon be stayed, because of any defect therein which does not prejudice the substantial rights of the defendant."

Although defense counsel was aware, as his motion demonstrated, that the information contained an inaccurate citation to the applicable punishment statute, he did not file a motion seeking the correct citation. See Rule 24.04(b)2. Instead, he filed a motion to dismiss on the ground that the challenged information was insufficient.

The test of the sufficiency of an indictment or information "is whether it contains all the essential elements of the offense as set out in the statute and clearly apprises defendant of the facts constituting the offense in order to enable him to meet the charge and to bar further prosecution." *State v. Strickland*, 609 S.W.2d 392, 395[7] (Mo. banc 1980). See also *Shive v. State*, 780 S.W.2d 359, 362[3] (Mo.App.1989). The challenged information satisfies that test.

The only case cited by defendant in support of his first point is *State v. Knight*, 764 S.W.2d 656 (Mo.App.1988). In that case the information, although failing to set forth the statute fixing punishment, was held sufficient.

"An indictment or information is not necessarily insufficient simply because statutory references are omitted or the wrong statutes cited." *State v. LaPlant*, 673 S.W.2d 782, 785[4] (Mo. banc 1984). In accordance with that principle, informations which fell short of complying with Rule 23.01(b)4 have been held sufficient. Such holdings were made where the information failed to cite the statute defining the offense or the punishment statute, *State v. Mitchell*, 611 S.W.2d 223 (Mo. banc 1981), *Shive v. State, supra, Hulstine v. State*, 702 S.W.2d 120 (Mo.App.1985), the information failed to cite the punishment statute, *State v. Knight, supra, Emmons v. State*, 621 S.W.2d 329 (Mo.App.1981), the information cited a non-existent statute as defining the offense, *Franklin v. State*, 655 S.W.2d 561 (Mo.App.1983), *State v. O'Toole*, 619 S.W.2d 804 (Mo.App.1981), and the information failed to cite the statute defining the offense, *Williamson v. State*, 628 S.W.2d 895 (Mo.App.1981), and *State v. Harris*, 598 S.W.2d 200 (Mo.App. 1980). Defendant's first point has no merit.

■ Defendant's second point is that the trial court erred in overruling defense counsel's objection to certain portions of the closing argument of the prosecutor. Defendant contends that the prosecutor improperly "professed his personal beliefs as to the defendant's guilt and as to controverted facts, thereby implying that his office gave him some special knowledge of guilt."

Although defendant does not challenge the sufficiency of the evidence to support the conviction, some of that evidence is germane to defendant's second point.

The state's evidence showed that on October 3, 1989, Tammy Cover, working in cooperation with law officers, telephoned defendant at his home in Joplin and asked defendant if she could get "a half gram of cocaine off you." Defendant told Tammy to "come on over." Tammy drove to defendant's house. She was followed by Deputy Sheriffs Watson and Randolph in a separate vehicle.

Tammy went to defendant's front door and he admitted her. They went to the bedroom where defendant weighed a substance, later identified as cocaine, on a scale, placed it in a "little baggie," and gave it to Tammy in exchange for $50. Upon leaving the house, Tammy delivered the baggie to the officers who in turn delivered it to the crime laboratory for analysis.

When Tammy made the cocaine purchase she was wearing a tape recorder but the tape later proved to be unintelligible.

Before her involvement in the cocaine purchase, Tammy had been an inmate in the Newton County Jail on a charge of stealing. Her cooperation with the officers with regard to the cocaine purchase was pursuant to an arrangement for disposition of the Newton County charge.

Although Tammy testified she paid defendant for a half gram of cocaine, Dr. Philip Whittle, the expert who examined the contents of the baggie, testified that the contents weighed .17 grams. Throughout the trial, defense counsel tried to make much of the foregoing, which he perceived to be an inconsistency in the state's evidence.

The only defense witness was Leonard Stinson, who testified that he was present in defendant's house at the time of the alleged offense. According to Stinson, he heard Tammy ask defendant if he had any cocaine and defendant replied that he did not. Stinson also testified that at the time he was living at defendant's house, Stinson was using cocaine.

During the prosecutor's opening argument, the following occurred:

"[The Prosecutor]: Clearly Miss Cover told us that when she received it from Mr. Hurtt, that he weighed it with the baggie and that's what he determined to be half a gram. It wouldn't be the first time that a person that dealt in illegal substances lied to the person just a little bit. Second of all, he used the baggie with it. Who knows? Maybe that weighed half a gram. My goodness, Dr. Whittle, who does hundreds of these cases said, looking at what he poured out of the baby powder trying to say it was half a gram, he said I could be off by as much as 30 percent just looking at it. So to expect an undercover agent, who is not a law enforcement officer, to know exactly, watching this person do something at five-thirty in the morning, a little nervous I'm sure with a tape recorder running, to say, yeah, let's weigh that out and let's make sure it's exactly half a

gram, I doubt that she did that, I doubt that they bartered over it.

[Defense Counsel]: Objection to what the prosecutor thinks or doubts.

The Court: The objection will be overruled."

Later, during the prosecutor's final argument, the following occurred:

"[The Prosecutor]: In the war on drugs, Tammy Cover is one of the walking wounded. In the war on drugs, Lennie Stinson is one of the walking wounded. I have no idea what this man's problem is beyond the fact that he delivered cocaine to a woman in this county, that's what I know about that man from today's testimony, and that's all you know about him from today's testimony.

[Defense Counsel]: Objection, again, as to what the prosecutor may or may not know.

The Court: Overruled."

"Broad discretion rests with the trial court in the control of closing argument, with wide latitude accorded counsel in their summations." *State v. Newlon*, 627 S.W.2d 606, 616 (Mo. banc 1982).

In *State v. Grant*, 702 S.W.2d 857 (Mo. App.1985), the court said, at 864[7]:

"Defendant asserts that the prosecuting attorney may not express his opinions or private knowledge of the defendant's guilt. But, the defendant has omitted a crucial portion of the rule.... A complete statement of the rule is that the prosecutor may not 'express to the jury in argument his belief of defendant's guilt in such a way that it implies knowledge on his part of facts not in evidence, pointing to defendant's guilt.' ... Belief of guilt may be stated where the opinion appears to be fairly based on the evidence....." (Citing authorities.)

The quoted portions of the prosecutor's argument make it clear that he was not implying knowledge on his part of facts, not in evidence, pointing to defendant's guilt. The first objection was properly overruled because the prosecutor was attempting to explain what defense counsel claimed to be an inconsistency between the

testimony of Tammy Cover and that of Dr. Whittle with respect to the weight of the cocaine. The second objection was properly overruled because the prosecutor was arguing that the state's evidence was more credible than that of the defense. The prosecutor's belief was an opinion "fairly based on the evidence." *State v. Grant, supra.* See *State v. Richardson,* 783 S.W.2d 511, 513 (Mo.App.1990); *State v. Anthony,* 577 S.W.2d 161, 162–163[1, 2] (Mo.App.1979). Defendant's second point has no merit.

 Defendant's third point is that the trial court erred in giving Instruction 5, the state's verdict-director. Defendant argues that the instruction which should have been given was MAI 332.08.

As the excellent brief of the state points out, Instruction 5 is not contained in the legal file. Rule 30.04(a) requires that the record on appeal contain "all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." It was defendant's duty to prepare the legal file. Rule 30.04(c).

Defendant's argument under his third point does set forth Instruction 5. Instruction 5, as the state points out, is based on MAI–CR 3d 325.04, adopted by order of the Supreme Court on September 1, 1990.

 Note 1 of the "Notes on Use" to MAI–CR 3d 325.04 reads: "Section 195.211, RSMo Supp.1989. This is new. It should be used for drug offenses committed on or after August 28, 1989."

In its order of June 14, 1990, effective September 1, 1990, adopting MAI–CR 325.-04, and other instructions, the supreme court stated that the instructions, including MAI–CR 3d 325.04, "must be used and followed on and after September 1, 1990, and may be used and followed prior thereto, and any such use shall not be presumed to be error."

On the date of the trial, February 23, 1990, the use of MAI–CR 3d 325.04 was permitted but not mandatory. Defendant's third point, which has not been preserved

for appellate review, discloses no plain error and, indeed, no error at all. Defendant's third point has no merit.

 Defendant's fourth point is that the trial court erred in receiving into evidence, over defendant's objection, state's Exhibit 3, the "baggie," which Tammy identified as the one which she received from the defendant at the time of the offense and which contained the substance later identified as cocaine. Defendant argues that the exhibit was inadmissible because "there was insufficient evidence to establish the chain of custody thereof, showing the exhibit to be in the same condition at the time of examination by the state's chemist as when allegedly received from the defendant and, further, that there was insufficient evidence to establish a foundation to tie said exhibit in time and place to the defendant."

In general, Tammy testified that Exhibit 3, and its contents, were delivered by her to Deputy Randolph. She testified that after receiving the baggie and its contents from defendant, she put them in the pocket of her jacket "and I gave it to [Randolph] right out of my pocket." Both she and Randolph initialed the baggie. Randolph testified that when he received Exhibit 3 and its contents from Tammy he put it in a larger bag, Exhibit 4, and delivered both exhibits to Dr. Whittle, who in turn returned the exhibits to Randolph after making his analysis. Randolph testified the exhibits remained in a locked evidence locker until the trial.

At the time Exhibit 3 was offered, the only objection made by defense counsel was "insufficient foundation of chain of custody." Tammy identified Exhibit 3 as the baggie itself, "the baggie I got off James that night." Here, as in *State v. Jones,* 760 S.W.2d 536 (Mo.App.1988), the evidentiary chain provides "reasonable assurance" that the substance purchased by Tammy was the same substance examined by Whittle and found to be cocaine. Moreover, since Exhibit 3 was the baggie itself, as distinguished from its contents, and was positively identified by Tammy, it was properly admitted. *State v. Fels,* 741 S.W.2d 855, 857[3] (Mo.App.1987); *State v.*

*Benson,* 718 S.W.2d 664, 666 (Mo.App. 1986). Defendant's fourth point has no merit.

The judgment is affirmed.

PARRISH, P.J., and SHRUM, J., concur.